IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-519-F

| | |
|---|---|
| SPIRAX SARCO, INC. and SPIRAX-SARCO ENGINEERING, PLC,<br>Plaintiffs,<br><br>v.<br><br>SSI ENGINEERING, INC., SSI SERVICES, INC., BRYAN JOHNSON, BENJAMIN DONALD LEWIS and MICHELLE H. LEWIS,<br>Defendants. | **ORDER** |

This matter is before the court on the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [DE-25]. In an order filed October 23, 2014 [DE-51], which was modified by the court's October 27, 2014, order [DE-53], the court allowed the motion, in part, as to its first request for relief: an order enjoining Defendants from any use, copying, or disclosure of Spirax data that presently is in the custody of Clark Walton. As to the second category for relief in the motion, the court invited more briefing. The parties have complied, and after reviewing the briefing and the record, the court concludes that the Motion [DE-25] is DENIED as to the additional requested relief.

## I. Standard of Review

The standard of review for a motion for a temporary restraining order and motion for preliminary injunction are the same. A preliminary injunction is an extraordinary interlocutory remedy, the purpose of which is to protect the status quo and prevent irreparable harm during the pendency of a lawsuit. *In re Microsoft Corp Antitrust Litig.*, 333 F.3d 517, 524-25 (4th Cir. 2003). A court, in its discretion, may issue a preliminary injunction only if the moving party clearly

establishes the following factors: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *West Virginia Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009).

## II. Background

Plaintiffs are Spirax Sarco Inc., and Spirax-Sarco Engineering, PLC. Spirax-Sarco is a Delaware corporation with its principal place of business in South Carolina. It manufactures goods and sells services for control and efficient use of steam, air, and other industrial fluids to industrial and commercial users in the United States. Spirax-Sarco Engineering, PLC is a UK-based engineering company and the parent of Spirax Sarco, Inc. The court will refer to them collectively as "Spirax" or "Plaintiffs."

Defendant Bryan Johnson is a former employee of Spirax Sarco, Inc. He was hired as a District Sales Manager for Spirax on June 1, 1998. Spirax alleges that at the time of his hire, he was bound to a covenant of non-solicitation, pursuant to which he agreed that for the 12-month period following his employment with Spirax, he would not solicit any customers upon whom he had called in the last two years of his employment with Spirax. Plaintiffs also allege that Johnson was bound a covenant of confidentiality, pursuant to which he agreed to protect proprietary and trade secret information belonging to Spirax in accordance with specified policies and procedures. Spirax, however, has no signed copy of either agreement. Defendants have proffered evidence that Johnson refused to sign a non-compete. *See* Decl. of Jacenko [DE-48] ¶ 16.

During the course of his employment, Johnson was the Spirax employee handling the

2

relationship with Defendant SSI Engineering, Inc. on Spirax's behalf from December 2013 until his resignation on May 27, 2014. Bryan Johnson contends that at the time of his resignation, he was in discussions with Mark McGinn, the new Vice President of Sales for Spirax, regarding a transition from an employee with Spirax to an Independent Manufacturer Representative ("IMR") in North Carolina and South Carolina for Spirax.

SSI Engineering, Inc. had a Consulting Agreement with Spirax Sarco, Inc., which it terminated by letter dated May 30, 2014. Defendants Benjamin Lewis and Michelle Lewis, who are married, are the principals of SSI Engineering, Inc. and SSI Services. Following Johnson's resignation from Spirax, he went to work for SSI Services as an outside sales manager.

On June 2, 2014, two employees retrieved the laptop issued to Johnson by Spirax. Later that week, IT employees reviewed the laptop and were suspicious that Johnson had deleted files, so the laptop was sent to a third-party for forensic analysis. That analysis revealed that two external electronic storage devices were connected to the laptop on May 26, 2014 (the day before Johnson resigned), and that he copied approximately 11,000 files on May 12 and 19,000 files on May 26. He also deleted 18,000 files on May 26.

The record indicates that Spirax Sarco, Inc., was in contact with an attorney for Johnson in July 2014. Johnson denied having any confidential information. His attorney also stated that Johnson used the laptop for personal use in addition to business use, and the information downloaded was photographs, personal emails, and other items and not confidential Spirax information.

Spirax disputed the characterization of the files being personal information. Eventually Johnson hired different counsel—the same attorney now representing him in this court—and the

3

parties agreed to a protocol regarding the disputed information. Under this protocol, the parties authorized a third party, Clark Walton, to take possession of the two electronic devices Johnson used to download files, as well as a Dropbox account he used to store electronic files. Under the parties' agreement, Walton made one copy of the content of each of the electronic devices and the Dropbox account ("the Copy"). Walton then delivered the Copy of the two electronic devices and the Dropbox account to Johnson and his attorney on September 11, 2014. Walton retained possession of the originals. The parties agreed that Johnson, with his attorney, would remove information that belonged solely to him by transferring the information from the copy to a new device ("the Johnson device"). Johnson and his attorney also kept a list of all the files removed. On September 25, 2014, the removal process was complete, and the next day Johnson's attorney sent the list to Spirax. Johnson and his attorney then sent the Copy and the Johnson device to Walton, who verified in writing the items that were transferred from the Copy to Johnson's device. Walton then moved the information remaining on the Copy to a new Spirax device, and sent that to Spirax, along with the password information for Dropbox account. The record indicates that the transfer of possession of the Dropbox account occurred on September 26, 2014.

When Spirax later reviewed the list of files transferred from the Copy to the Johnson device, it believed that Johnson was continuing to assert ownership over information that actually belonged to Spirax. It also reviewed the Dropbox account, and discovered that Johnson had deleted or removed hundreds of photo files from the Dropbox account between September 2 and 3, 2014.

Additionally, Plaintiffs contend that Defendants were bidding on projects against Spirax. The Amended Complaint and record indicates that Spirax knew about this behavior since at least early June. In August 2014 Spirax also learned that Defendants were bidding on a project with one

4

of their customers. After Defendants learned that Spirax knew about the bid, they withdrew from the process.

Plaintiffs filed a verified complaint in this court on September 17, 2014, and with Defendants' consent, filed an amended verified complaint on October 16, 2014 [DE-24]. The amended verified complaint alleges a claim of computer trespass against Johnson; violation of the North Carolina and South Carolina trade secrets acts against all defendants; unfair and deceptive trade practices against all defendants; breach of contract against Johnson; breach of duty of loyalty against Johnson; conversion against all Defendants; and tortious interference with prospective economic advantage/contractual relations against all Defendants. That same day, Plaintiffs filed the instant motion for temporary restraining order and preliminary injunction.

The court held a hearing on the motion on October 22, 2014, and issued an order on October 23, 2014, reflecting the injunctive relief to which the parties had agreed to in open court. The court requested additional briefing. While the additional briefing was underway, Defendants filed a verified answers and counterclaims. All the parties subsequently filed motions to dismiss various claims and counterclaims, which are not addressed in this order.[1]

### III. Discussion

The second part of the relief requested by Plaintiffs is an order enjoining Defendant Bryan Johnson, for a period of one year, from directly or indirectly marketing to or otherwise soliciting work from the customers whom he solicited on behalf of Spirax during the two years prior to May 27, 2014. Plaintiffs initially argued that they were entitled to this relief on the basis of their breach of contract claim, to the extent it rests upon Defendant Bryan Johnson's alleged covenant not to

---

[1] An order addressing those motions is forthcoming.

5

compete. As the parties and the court discussed at the October 22, 2014 hearing on the motion, however, North Carolina requires that any contract which "limit[s] the rights of any person to do business anywhere in the State of North Carolina" must be "in writing duly signed by the party who agrees not to enter into any such business within such territory . . . ." N.C. Gen. Stat. § 75-4.[2] Although Plaintiffs contend that Defendant Bryan Johnson has, in fact, signed a non-compete agreement, Plaintiffs have not proffered an actual copy of such an agreement that is signed by Johnson. With regard to the likelihood of success on the merits, Plaintiffs bear the burden of making "a *clear showing* that [they are] *likely* to succeed at trial on the merits." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 351 (4th Cir. 2009) *cert. granted, judgment vacated*, 559 U.S. 1089 (2010) and *adhered to in part sub nom. The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010). Without a signed contract, Plaintiffs cannot make this showing as to their claim for breach of the covenant not to compete.

At the hearing, Plaintiffs proffered an alternate reason why Defendant Bryan Johnson should be enjoined from soliciting his former customers: the court should enjoin Johnson from soliciting specified former customers under the theory of "inevitable disclosure" of trade secrets. *See Merck & Co., Inc. v. Lyon*, 941 F. Supp. 1443, 1457 (M.D.N.C. 1996). The court requested, and the parties have provided, supplemental briefing on this issue.

The North Carolina Trade Secrets Protection Act ("TSPA"), N.C. Gen Stat. §§ 66–152 to 66-162, provides the owner of a trade secret with a private right of action against a party which has

---

[2] Plaintiffs also argued in their briefing that alleged agreement should not be subject to North Carolina General Statute Section 75-4 because it is a non-solicitation agreement, as opposed to a non-compete agreement. Plaintiffs cited no authority for this argument, and the court finds it unavailing.

6

misappropriated that trade secret. N. C. Gen. Stat. § 66-153.[3] To state a cause of action under the TSPA, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003). Additionally, a general allegation that an employee "acquired knowledge of [the former employer's] business methods; clients; their specific requirements and needs; and other confidential information pertaining to [the former employer's] business " is not adequate to state a TSPA claim." *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 327, 660 S.E.2d 577, 586 (2008).

With regard to injunctive relief, the TSPA provides that "actual or threatened misappropriation of a trade secret may be preliminarily enjoined during the pendency of [an] action." N.C. Gen. Stat. § 66-154(a). North Carolina courts have stated that "[a] prelminary injunction is an appropriate remedy "where actual misappropriation is demonstrated . . . ." *Unimin Corp v. Gallo*, 2014 NCBC 43 ¶ 51. 2014 WL 444162, at *12 (N.C. Super. Ct. Sept. 4, 2012) (citing *Allegis Group, Inc. v. Zachary Piper LLC*, 2013 NCBC 13 ¶52, 2013 WL 709581, at *10 (N.C. Super. Ct. Feb. 25, 2013)). North Carolina courts have been reluctant, however, to "grant injunctive relief solely on the basis of threatened misappropriation without proof of actual misappropriation." *Id.* (citing *Analog Devices*, 157 N.C. App. at 470-71, 579 S.E.2d at 455).

Here, Plaintiffs contend that they have demonstrated "actual misappropriation" of trade

---

[3] The parties also reference the South Carolina Trade Secrets Protection Act, and South Carolina's interpretation of the law and the doctrine of inevitable disclosure. The court does not find South Carolina's interpretation to be materially different than that of North Carolina, and so for purposes of this motion, the court will assume that North Carolina law applies.

7

secrets, by virtue of Defendants returning Spirax documents to them and consenting to the injunctive relief set forth in the court's October 23, 2014 order [DE-51], and accordingly, they are entitled to their requested additional injunctive relief. Alternatively, they argue that the doctrine of inevitable disclosure applies and makes their additional requested injunctive relief appropriate.

As to Plaintiffs' first contention—that there is proof that Defendant Johnson has acquired, if not used, trade secrets, and therefore has misappropriated them—the court finds that Plaintiff's argument misses the mark. First, the court notes that Defendants <u>have consented</u> to be enjoined from the use, copying, or disclosure of the data that is presently in the custody of Clark Walton. Thus, even if this court assumes that the data contains trade secrets, Defendants cannot use this data in any sort of competition with Plaintiffs, irrespective of whether any of the Defendants previously misappropriated the documents.[4] Second, although Plaintiff argues that Johnson's return of files demonstrates his earlier bad faith and underhandedness, the court does not find, given the hotly disputed facts, there is sufficient evidence of bad faith or underhandedness on the part of Johnson.

Thus, the court may only consider the additional injunctive relief sought by Plaintiffs if they can successfully rely on the doctrine of inevitable disclosure. As the North Carolina Court of Appeals has stated, the doctrine of "inevitable disclosure" is applied "when an employee who knows trade secrets of his employer leaves the employer for a competitor, and, because of the similarity of

---

[4] Although Plaintiffs state that this court, by virtue of its October 23, 2014, order, has made a variety of findings and conclusions as to the existence of trade secrets, irreparable harm, and the like, the reality is that the court's ruling was premised upon <u>Defendants' consent</u> to the limited injunction. *See* October 23, 2014 [DE-51] Order at 2 ("At the hearing, counsel for Defendants stated they had no objection to this, to the extent they are enjoined from the use, copying or disclosure of data that presently is in the custody of a third-party, Clark Walton. Plaintiffs concurred, and accordingly, Plaintiffs' motion for preliminary injunction [DE-25] is ALLOWED as to this requested relief."). The court, accordingly, has made none of the findings referenced by Plaintiffs.

8

the employee's work for the two companies, it is 'inevitable' that he will use or disclose trade secrets of the first employer." *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 470, 579 S.E.2d 449, 445 n.3 (2003). The doctrine, however, has never been adopted by the North Carolina Supreme Court or the North Carolina Court of Appeals. *See id.* at 470, 579 S.E.2d at 454-55 (declining to reach the question of whether the doctrine applies under North Carolina law); *Allegis Group, Inc. v. Zachary Piper LLC*, 2013 NCBC 13, 2013 WL 709581, at *11 (N.C. Super. Ct. Feb. 25, 2013) (recognizing that "[it] is less than clear as to how that doctrine is to be applied in North Carolina" and that the latest North Carolina appellate opinion discussing "inevitable disclosure" "did not reach that issue squarely" but "clearly suggested . . . that should the doctrine be applied, it should be used only to limit the scope of an employee's new employment duties while not preventing any and all employment with the plaintiff's competitor."). A federal district court in the Middle District of North Carolina, however, has predicted that the North Carolina Supreme Court will recognize the doctrine in appropriate circumstances. *Merck*, 941 F. Supp. at 1459.[5]

In so doing, the *Merck* court listed several factors it found important to consider when determining whether to apply the doctrine of inevitable disclosure, including (1) the circumstances surrounding the termination of employment; (2) the importance of the employee's job or position; (3) the type of work performed by the employee; (4) the kind of information sought to be protected and the value of the information; (5) the degree of competition between the former and new employer; (6) the new employer's efforts to safeguard the former employer's trade secrets; (7) the

---

[5] Similarly, no South Carolina state court has adopted the doctrine, although federal district courts in South Carolina have predicted that South Carolina would apply it. *See Nucor Corp. v. Bell*, C/A No. 2:06-CV-02972-DCN, 2008 WL 9894350, at *15-16 (D.SC. March 14, 2008) ("The South Carolina courts have not addressed whether the inevitable disclosure doctrine applies in this state . . . . Nonetheless, the court believes that the South Carolina Supreme Court would recognize the inevitable disclosure doctrine.").

9

former employer's lack of forthrightness in his activities before accepting his job and in his testimony; and (8) the degree of similarity between the employee's former and current position.

The court will assume—without deciding—that North Carolina would adopt the doctrine of inevitable disclosure under certain circumstances. Nevertheless, examining the factors set forth in *Merck,* the court does not find that Plaintiffs have made the showing necessary for an issuance of a preliminary injunction prohibiting Defendant Johnson from competitive activity on the basis of threatened inevitable disclosure. First, the court emphasizes, again, that Johnson and the other Defendants have consented to not utilizing any information that is in the custody of Clark Walton. Plaintiffs have not convincingly shown that this information[6]—being held by a third party custodian—will be "inevitably disclosed" should Johnson continue to work for the other defendants in sales. Second, all of the factors typically considered by courts in an inevitable disclosure analysis are hotly disputed by the parties, and the court does not find Plaintiff's evidence to clearly establish any of them. Third, Plaintiffs point to Johnson's deletion of items from the Dropbox Account, as evidence that he will use trade secrets of Plaintiffs. There is no indication in the record, however, that any of these items contain "trade secrets" under the law. Plaintiffs maintain it is not their fault they cannot articulate what, exactly, was deleted from the Dropbox Account, but it is undisputed that they had access to the Account on September 26, 2014, at which time they would have been able to ascertain the contents of any files. Under these circumstances, the court will not infer that what Defendant Johnson allegedly deleted constituted trade secrets, or even property, of Spirax. Accordingly, on this record, the court is left to hypothesize what, exactly, Defendant Johnson may

---

[6] Again, the court will assume, for purposes of this motion only, that the data in fact includes trade secrets of Plaintiffs.

10

disclose to the other defendants while he works for them. This is not sufficient to show a likelihood of success on the merits on an "inevitable disclosure" theory, and consequently, Plaintiff's further request for injunctive relief[7] is not appropriate.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction [DE-25] is DENIED to the extent it seeks further relief than that allowed in the court's October 23, 2014, Order [DE-51].

SO ORDERED.

This the 17 day of April, 2015.

James C. Fox
Senior United States District Judge

---

[7] In the Motion for Preliminary Injunction [DE-25], Plaintiffs sought an order containing the following preliminary injunctive relief:
a. Enjoining all Defendants from any use, copying, or disclosure of Spirax documents;
b. Enjoining Defendant Johnson for one year from directly or indirectly marketing or otherwise soliciting work from the customers whom he solicited on behalf of Spirax during the two years prior to May 27, 2014 . . . .;
c. Enjoining all Defendants to return all property (both tangible and intangible, including all copies thereof) of the Plaintiffs that has been stolen, misappropriated, or otherwise taken by any of the Defendants; and
d. Enjoining Defendants from continued delivery of any goods or services on any contracts or work solicited by Defendant Johnson from his former Spirax customers and from any contracts or work obtained by any of the Defendants through use of Spirax documents or other property.

The court finds that the consent injunctive relief awarded by the court adequately covers the relief sought in paragraph a. Additionally, given the protocol entered into by the parties, combined with the injunctive relief already awarded, the court finds the paragraph c to be redundant. Finally, the remainder of the requested relief is inappropriate because of the lack of clear showing of success on the merits of an inevitable disclosure theory.