IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-519-F

| | | |
|---|---|---|
| SPIRAX SARCO, INC. and SPIRAX-SARCO ENGINEERING, PLC,<br><br>Plaintiffs,<br><br><br><br>v.<br><br>SSI ENGINEERING, INC., SSI SERVICES, INC., BRYAN JOHNSON, BENJAMIN DONALD LEWIS and MICHELLE H. LEWIS,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | **O R D E R** |

This matter is before the court on the Motion to Dismiss [DE-57] filed by Defendants SSI Engineering, Inc., SSI Services, Inc., Bryan Johnson, Benjamin Donald Lewis, and Michelle H. Lewis (collectively, "Defendants"). Also before the court are the Motions to Dismiss [DE-76; DE-78] Defendants' Counterclaims filed by Plaintiffs Spirax Sarco, Inc. and Spirax-Sarco Engineering, PLC (collectively, "Spirax" or "Plaintiffs"). For the reasons stated below, all of the motions to dismiss are ALLOWED in part and DENIED in part.

## I. BACKGROUND

Plaintiffs filed a verified complaint in this court on September 17, 2014, and with Defendants' consent, filed an amended verified complaint on October 16, 2014 [DE-24]. The amended verified complaint alleges a claim of computer trespass against Johnson; violation of the North Carolina and South Carolina trade secrets acts against all defendants; unfair and deceptive trade practices against all defendants; breach of contract against Johnson; breach of duty of loyalty against Johnson; conversion against all Defendants; and tortious interference with prospective

economic advantage/contractual relations against all Defendants. That same day, Plaintiffs filed a motion for temporary restraining order and preliminary injunction.

The court held a hearing on the motion on October 22, 2014, and issued an order on October 23, 2014, reflecting the injunctive relief to which the parties had agreed to in open court: that Defendants are enjoined from any use, copying, or disclosure of Spirax data that presently is in the custody of Clark Walton. The court requested additional briefing on the issue of "inevitable disclosure," as it related to Plaintiffs' request for an order enjoining Defendant Johnson's solicitation of certain Spirax customers.

While the additional briefing was underway, Defendants filed a verified answers and counterclaims. Defendant Johnson asserts counterclaims for abuse of process; tortious interference with prospective and contractual relations; conversion; trespass; unfair and deceptive trade practices; defamation; and violation of the South Carolina Payment of Wages Act. The remaining defendants assert counterclaims for abuse of process; tortious interference with prospective and contractual relations; unfair and deceptive trade practices; and quantum meruit/unjust enrichment. All the parties subsequently filed the instant motions to dismiss. On April 17, 2015, the court issued an order denying Plaintiffs' request for further preliminary injunctive relief other than that already provided in the court's October 23, 2014, Order.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). While the court accepts the factual allegations as true, the "'[f]actual allegations must be enough to raise a right to relief above the speculative

2

level' and the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when deciding a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss several of the claims asserted against them.

**A.    Facts underlying Plaintiffs' claims**

The facts, as alleged in Plaintiffs' Amended Verified Complaint [DE-24], are as follows:

Plaintiff Spirax-Sarco, Inc. is a Delaware corporation with its principal place of business in South Carolina. It manufactures goods and sells services for control and efficient use of steam, air, and other industrial fluids to industrial and commercial users in the United States. Ver. Am. Compl. [DE-24] ¶ 1 Spirax-Sarco Engineering, PLC is a UK-based engineering company and the parent of Spirax Sarco, Inc. *Id.* at ¶ 2.

Defendant Bryan Johnson is a former employee of Spirax Sarco, Inc. He was hired as a District Sales Manager for Spirax on June 1, 1998. *Id.* at ¶ 13. Spirax alleges that at the time of his hire, Johnson was bound to a covenant of non-solicitation, pursuant to which he agreed that for the 12-month period following his employment with Spirax, he would not solicit any customers upon whom he had called in the last two years of his employment with Spirax. *Id.* at ¶ 18. Plaintiffs also

3

allege that Johnson was bound a covenant of confidentiality, pursuant to which he agreed to protect proprietary and trade secret information belonging to Spirax in accordance with specified policies and procedures. *Id.* at ¶ 20.

During the course of his employment, Johnson was the Spirax employee handling the relationship with Defendant SSI Engineering, Inc. ("SSI Engineering") on Spirax's behalf from December 2013 until his resignation on May 27, 2014. *Id.* at ¶ 28. SSI Engineering had a Consulting Agreement with Spirax Sarco, Inc., which it terminated by letter dated May 30, 2014, three days after Johnson resigned. *Id.* at ¶ 43. Defendants Benjamin Lewis and Michelle Lewis, who are married, are the principals of SSI Engineering and SSI Services. Following Johnson's resignation from Spirax, he went to work for SSI Services and SSI Engineering as a sales manager. *Id.* at ¶ 44.

On June 2, 2014, two employees retrieved the laptop issued to Johnson by Spirax. Later that week, IT employees reviewed the laptop and were suspicious that Johnson had deleted files, so the laptop was sent to a third-party for forensic analysis. That analysis revealed that two external electronic storage devices were connected to the laptop on May 26, 2014 (the day before Johnson resigned), and that he copied approximately 11,000 files on May 12 and 19,000 files on May 26. He also deleted 18,000 files on May 26. *Id.* at ¶¶ 33-34. Spirax alleges that the files copied include documents containing confidential, proprietary, and/or trade secret information belonging to Spirax.

Spirax alleges that Defendants were bidding on or seeking to become involved in projects of existing Spirax customers, including the "Coty Project" in Sanford, North Carolina, and the Greenland Veteran's Administration Hospital project (the "VA project") in Columbia, South Carolina. *Id.* at ¶ 46. Spirax alleges that Defendants Johnson and Benjamin Lewis had been involved with both projects since February of 2014 until the end of May of 2014, when Johnson left Spirax

4

and SSI Engineering terminated its Consulting Agreement with Spirax. According to Spirax, Defendants used stolen proprietary information to underbid Spirax on the VA project. *Id.* at ¶ 48.

Spirax also alleges Johnson secretly leased a storage unit in the name of "Spirax, Inc., in care of Bryan Johnson" in which he stored Spirax parts, literature, and materials, and paid for the unit in a manner designed to disguise the secret storage unit from Spirax management. *Id.* at ¶¶ 51-52. Spirax, upon discovering the existence of the rental unit after Johnson's resignation, took re-possession and custody of the Spirax material in the rental unit, which it valued at approximately $6,500.00. *Id.* at ¶ 60.

Against this backdrop, Spirax asserts a claim of computer trespass against Johnson; violation of the North Carolina and South Carolina trade secrets acts against all defendants; unfair and deceptive trade practices against all defendants; breach of contract against Johnson; breach of duty of loyalty against Johnson; conversion against all Defendants; and tortious interference with prospective economic advantage/contractual relations against all Defendants. The Defendants now move to dismiss the breach of contract, computer trespass, and breach of duty of loyalty claim asserted against Defendant Johnson. They also move to dismiss the claims for tortious interference with prospective economic advantages/contractual relations, unfair and deceptive trade practices , conversion, violation of the trade secrets act, and civil conspiracy asserted against all Defendants. They further contend there is no basis for individual liability for Defendants Benjamin and Michelle Lewis, and that Plaintiff Spirax-Sarco Engineering, PLC, has no standing to assert claims. The court will address these arguments in turn.

**B.     Breach of Contract claim against Defendant Johnson**

Spirax alleges that "[a]s a condition of employment, Defendant Johnson agreed to a covenant

not to solicit for a period of 12 months after termination of his employment any and all Spriax customers upon whom he called within 24 months prior to the termination of his employment with Spirax." Ver. Am. Compl. [DE-24] ¶ 102. Spirax also alleges that as another condition of employment, Johnson "agreed to a covenant of confidentiality to protect Spirax's proprietary and confidential information, including trade secrets, and not to engage in acts or omissions which could result in wrongful disclosures." *Id.* ¶ 103. Spirax alleges that Johnson has breached both of these covenants.

Johnson moves to dismiss the breach of contract claim, arguing that the statute of frauds applies to any non-solicitation provisions. Spirax attached a form "Confidentiality Agreement" to the Verified Amended Complaint [DE-24-1], but did not attach a contract that was signed by Johnson. According to Johnson, the failure to attach such a signed complaint or to affirmatively allege that Johnson signed the written form of the Confidentiality Agreement is fatal to Spirax's breach of contract claim.

It is unclear to the court which law's jurisdiction governs the breach of contract claim.[1] Under any of the possible jurisdictions governing laws, however, the statute of frauds is an affirmative defense. *See Green v. Harbour*, 113 N.C. App. 280, 281, 437 S.E.2d 719, 720 (1994) (observing that the statute of frauds is an affirmative defense that must be pleaded); *Fici v. Koon*, 372 S.C. 341, 349, 642 S.E.2d 602, 606 (2007) ("The Statute of Frauds is an affirmative defense.").[2]

---

[1] The parties reference both North Carolina and South Carolina in their briefing. The form Confidentiality Agreement states that it is governed by Pennsylvania law. *See* Confidentiality Agreement [DE-24-1] at 4.

[2] Again, the form Confidentiality Agreement states that it is governed by Pennsylvania law. It does not appear that Pennsylvania's statute of frauds applies to a covenant not to compete. *See Toll v. Tannenbaum*, 982 F. Supp. 2d 541, 549 (E.D. Pa. 2013) (explaining that Pennsylvania's statute of frauds does not limit enforcement of oral contracts to those that can be performed within a limited period of time).

6

It is well established that affirmative defenses, such as the statute of frauds, may be raised in a Rule 12(b)(6) motion to dismiss, but for dismissal to be allowed on the basis of an affirmative defense, all the facts necessary to establish the defense must be clear on the face of the plaintiff's pleadings. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense . . . ."). Here, "all the facts necessary" to establish the defense are not apparent from the face of the complaint. As Spirax notes, there is no allegation that Johnson and Spirax entered into an oral agreement; rather, the allegations state only that as a condition of his employment, Johnson agreed to the covenant not to compete. Ver. Am. Compl. [DE-24] ¶¶ 16-17. The court understands that Johnson vigorously contests this, but it does not mean that the court must read an additional element into the necessary requirements to state a plausible breach of contract claim.

The elements of such a claim are " the (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); *see also Fuller v. Eastern Fire & Cas. Ins. Co.*, 240 S.C. 75, 90, 124 S.E.2d 602, 610 (1962). The allegations are sufficient to meet those elements, and the court finds Johnson's additional arguments to be unavailing. Accordingly, the Motion to Dismiss [DE-54] IS DENIED as to the breach of contract claim.

## C.    Computer Trespass against Defendant Johnson

Johnson also moves to dismiss the claim of computer trespass against him. North Carolina General Statute § 14-458 provides, in relevant part:

(a) . . . [I]t shall be unlawful for any person to use a computer or computer network

without authority and with the intent to do any of the following:

> (1) Temporarily or permanently remove, halt, or otherwise disable any computer data, computer programs, or computer software from a computer or a computer network.

. . .

> (3) Alter or erase any computer data, computer program or computer software.

. . .

> (5) Make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs, or computer software residing in, communicated by, or produced by computer or computer network.

. . .

> For purposes of this subsection, a person is "without authority" when (i) the person has no right or permission of the owner to use a computer, or the person uses a computer in a manner exceeding the right or permission . . . .

N.C. Gen. Stat. § 14-458(a). The statute provides for a private right of action by "[a]ny person whose property or person is injured by reason of a violation of this section . . . ." *Id.* § 14-458(b).

Relying on cases interpreting the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, which does not define "authorization," Johnson argues that Spirax's allegations are insufficient to show that he used a computer or computer network without authority. As Spirax observes, however, the cases cited by Johnson are of limited usefulness because North Carolina's statute does define authorization. Under the statute, "a person is 'without authority' when . . . the person uses a computer in a manner exceeding the right or permission." N.C. Gen. Stat. § 14-458(a). Spirax alleges that Johnson intentionally used his Spirax-issued laptop to download vast quantities of computer files to his own media devices and Dropbox account, without authorization and in contravention of Spirax policies, and he also deleted vast quantities of computer files from the Spirax-issued laptop without authorization. Ver. Am. Compl. [DE-24] ¶¶ 33-34, 37-39, 42. At this juncture, this is sufficient to state a claim under North Carolina law. The motion to dismiss is

8

DENIED as to the computer trespass claim.

**D. Breach of Loyalty against Defendant Johnson**

Spirax alleges Johnson owed a common law duty of loyalty to the company, and he breached that duty by, *inter alia*, allegedly stealing files from his work computer, submitting false exprense reports related to the off-site storage unit, and diverting corporate opportunities from Spirax to his co-defendants. Ver. Am. Compl. [DE-24] ¶¶ 106-107. Johnson moves to dismiss this claim, arguing that no such duty of loyalty exists under North Carolina. *See* Mem. in Support of Mot. to Dismiss [DE-58] at 12-13 ("Thus, in North Carolina, there is no independent claim for breach of duty of loyalty in an employer-employee setting, outside of an affirmative defense to a cause of action for wrongful termination.") (citing *Dalton v. Camp*, 353 N.C. 647, 653, 548 S.E.2d 704, 709 (2001)).

In response, Spirax appears to concede that there is no applicable claim under North Carolina law, but argues that (1) South Carolina law applies; (2) Johnson has conceded that South Carolina law applies by asserting a South Carolina Wage Payment Act counterclaim; and (3) it has adequately stated a breach of loyalty claim under South Carolina law. Resp. in Opp. to Mot. to Dismiss [DE-70] at 8-9. In his reply, Johnson does not appear to concede that South Carolina law governs this claim, and further argues that South Carolina has only recognize that "key employees" owe a duty of loyalty to their employers, and that South Carolina "has not expressly recognized this duty independent from an employment contract." Reply [DE-73] at 6 (citing *Foreign Academic & Culural Exch. Servs. v. Tripon*, 394 S.C. 197, 205, 715 S.E.2d 331, 335 (2011)).

The court's review of South Carolina law belies Johnson's assertions. In *Lowndes Products, Inc. v. Brower*, 292 S.C. 322, 191 S.E.2d 761 (1972), the South Carolina Supreme Court recognized:

An employee has a duty of fidelity to his employer apart from the question whether

9

he has an obligation to maintain the employer's processes and system of operation in confidence. In the absence of an agreement, there is normally nothing wrong with an employee terminating employment and proceeding to compete with his former employer. At the same time, the employee has a duty not to do disloyal acts looking to future competition.

*Id.* at 333, 191 S.E.2d at 767. Although the court's opinion refers to some of the defendants as "key employees," the court's holding does not appear in any way to be predicated on the defendants' status as "key employees." Moreover, the opinion explicitly highlighted that no "contracts of employment for a specific term" were involved in the facts. *Id.* at 325 191 S.E.2d at 763. Although the South Carolina Supreme Court has later stated that it "expresses no opinion as to the viability of the breach of duty of loyalty claim as one independent of the breach of contract action," it did so in a case where there was, in fact, a contract between the employer and employee. *See Tripon*, 394 S.C. at 205, 715 S.E.2d at 335. Thus, the issue left open was whether an independent tort for breach of loyalty can exist where there is, in fact, a contract, in contrast to the facts in *Lowndes* where there were no contracts of employment.

Accordingly, it appears that whether Spirax has a viable breach of loyalty claim depends upon whether South Carolina or North Carolina governs. It is well-settled that a "[f]ederal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." *Volvo Constr. Equip. North America, Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599-600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, Inc., 313 U.S. 487, 496 (1941)). This court, accordingly, must apply the choice-of-law rules for the State of North Carolina as announced by the North Carolina Supreme Court. *Brendle v. General Tire & Rubber Co.,* 505 F.2d 243, 245 (4th Cir. 1974). Where the North Carolina Supreme Court has not spoken, this court must predict how the

court would rule. *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). In so doing, the decisions of North Carolina' intermediate appellate court, the North Carolina Court of Appeals, " 'constitute the next best indicia of what state law is,' although such decisions 'may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Id.* (quoting 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4507 (1982)). Additionally, this court may consider "among other things, canons of construction, restatements of the law and treatises" and "well considered dicta" of the North Carolina Supreme Court. *Id.* Moreover, if the Fourth Circuit has predicted how the North Carolina Supreme Court would rule, then this court should follow that decision in the absence of a later state court decision that renders the Fourth Circuit's decision clearly no longer persuasive regarding North Carolina law. *See Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995) (explaining that a district court was bound by the Fifth Circuit's "interpretation of state law absent a subsequent state court decision or statutory amendment that rendered this court's prior decision clearly wrong"). *Cf. Derflinger v. Ford Motor Co.*, 866 F.2d 107, 110 (4th Cir. 1989) (quoting *Broussard v. Southern Pacific Transp. Co.*, 665 F2d 1387, 1389 (5th Cir. 1982)) (explaining that general rule that one panel cannot overrule another panel "applies with equal force to cases in which state law supplies the substantive rule of decision" in the absence of a subsequent state court decision or statutory amendment).

With regard to torts, the North Carolina Supreme Court "has consistently adhered to the *lex loci [delicti]* rule in tort actions," *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988), which dictates that the law of the state of the situs of the claim governs the case. *Id. Lex loci delicti*, which is defined as "the law of the place where the tort was committed," *Black's Law*

*Dictionary* 923 (7th ed. 1999), is also known as "the law of the place of the wrong." *Brendle v. General Tire & Rubber Co.*, 408 F.2d 116, 117 n.3 (4th Cir. 1969). The North Carolina Supreme Court has observed that "the place of a wrong is in the State where the last event takes place which is necessary to render the actor liable for an alleged tort." *Farmer v. Ferris*, 260 N.C. 619, 627,133 S.E.2d 492, 498 (1963) (citing *Restatement (First) of Conflict of Laws* § 377 (1934)); *see also Brendle*, 408 F.2d at 117 n.3. For most torts, the last event necessary to trigger liability is the injury to the plaintiff, which has prompted the Fourth Circuit to observe that *in most instances*, the "North Carolina rule, in a nutshell, is the law of the place of injury." *Santana, Inc. v. Levi Strauss & Co.*, 674 F.2d 269, 272 (4th Cir. 1982); *see also Boudreau*, 322 N.C. at 335, 368 S.E.2d at 854 ("For actions sounding in tort, the state where the injury occurred is the situs of the claim."). Nevertheless, application of the *lex loci* rule has proven difficult for many torts. *See, e.g., Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 697, 698 S.E.2d 719, 726 (2010).

The parties' briefing is devoid of any discussion of how *lex loci delicti* applies to the claim of breach of loyalty in this case. Accordingly, the Motion to Dismiss [DE-57] is DENIED as to the breach of loyalty claim, without prejudice to renew within 30 days with appropriate briefing on which jurisdiction's law governs the claim, or alternatively, to address the matter in a motion for summary judgment.

## E. Civil Conspiracy Liability for Defendants Benjamin Lewis and Michelle Lewis Individually

Defendants Benjamin Lewis and Michelle Lewis move to dismiss the claims asserted against them individually, arguing there is no basis for individual liability against them. Specifically, the Lewises contend they only allegations regarding them in the Verified Amended Complaint pertain

12

to their roles as shareholders or employees of SSI Engineering and SSI Services, and to impose liability on them impermissibly disregards the corporate form. Spirax contends, however, that its theory of civil conspiracy allows it to assert claims against the Lewises individually.

Under North Carolina law, there is no separate cause of action, per se, for civil conspiracy. *See, e.g., Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005). Rather, it is a theory of liability, such that "[o]nce the elements of a civil conspiracy are established, all conspirators are jointly and severally liable for damages resulting from an act performed by any one of them in furtherance of the conspiracy." *Jackson v. Blue Dolphin Commc'ns of N. Carolina, L.L.C.*, 226 F. Supp. 2d 785, 791 (W.D.N.C. 2002) (citing *Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 747 (1987)). To invoke this theory of liability, a plaintiff must allege "a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 416, 537 S.E.2d 248, 265 (2000) (quoting *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984)).[3] It is well-settled, however, that a corporation cannot conspire with itself. *See State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 184 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007), *aff'd in part and rev'd in part on other grounds*, 362 N.C. 431, 666 S.E.2d 107 (2008) ("An allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself."); *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 626 S.E.2d 884 (2006). "A corporation's officers, employees, or agents are mere extensions of the corporation, and an agreement between such personnel (or between such personnel

---

[3] A claim of civil conspiracy under South Carolina involves similar elements. *See Pye v. Estate of Fox*, 369 S.C. 555, 567, 633 S.E.2d 505, 511 (2006) ("The elements of civil conspiracy in South Carolina are (1) the combination of two or more people, (2) for the purpose of injuring the plaintiff, (3) which causes special damages.")

and the corporation they serve) is therefore not a conspiracy." *Iglesias v. Wolford*, 539 F. Supp. 2d 831, 836 (E.D.N.C. 2008).

Here, the allegations of the Verified Amended Complaint can be fairly read as alleging that Johnson entered into an agreement with the Lewis Defendants, SSI Services, and SSI Engineering prior to leaving his employment with Spirax. This is enough to overcome the "intracorporate immunity" defense. *See Safety Test & Equip. Co. v. Am. Safety Util. Corp.*, No. 13 CVS 1037, 2015 WL 1880769, at *19 (N.C. Super. Apr. 23, 2015) (denying motion for summary judgment where evidence suggested that defendant corporation, its owners, and two individuals reached an agreement while the individuals were still employed at plaintiff corporation); *McMillan*, 367 S.C. at 564, 626 S.E.2d at 887 ("[T]his Court has held that agents for a corporation acting in the scope of their duties cannot conspire with the corporation absent the guilty knowledge of a third party."). Moreover, the court finds that the allegations of the Verified Amended Complaint are sufficient, at this juncture, to survive a motion to dismiss as to the civil conspiracy claim. Assuming Spirax can marshal sufficient evidence to support its allegations, this is sufficient to impose liability on the Lewis Defendants. Accordingly, to the extent that the motion to dismiss seeks to dismiss the civil conspiracy claims or claims against the Lewis Defendants in their individual capacity, the motion is DENIED.

## F. Tortious Interference with Prospective Economic Advantage/Contractual Relations Against all Defendants

Defendants move to dismiss Spirax's tortious interference with prospective economic advantage/contractual relations claim.[4] The elements of a claim of tortious interference with contract

---

[4] Again, the parties do not address the choice-of-law issue with regard to this claim in their briefing. There appears to be little difference between South Carolina and North Carolina law for this claim, and so the court

are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Holleman v. Aiken*, 193 N.C. App. 484, 500, 668 S.E.2d 579, 589-90 (2008). "The only difference in these elements for a tortious interference with prospective economic advantage claim is that instead of an existing contract, there must be a contract that would have been entered into but for the defendant's conduct." *Nat'l Welders Supply Co. v. Roberts Oxygen Co.*, No. 3:07-CV-350, 2008 WL 1837251, at *1 (W.D.N.C. Apr. 22, 2008) (citing *Beck v. City of Durham*, 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002)).

Defendants argue that the tortious interference claim must be dismissed because (1) Spirax has failed to sufficiently allege damages or specify any contracts it has lost, and (2) it has only referenced lost contracts for "engineering services," which it is not licensed to provide. Defendants' former argument is without merit. In the Verified Amended Complaint, Spirax alleges that it lost the VA Project in Columbia, South Carolina. Ver. Am. Compl. [DE-24] ¶¶ 48-49. It also alleges it lost profits and contract revenues. *Id.* at ¶ 50. These allegations are not insufficient. *See Burgess v. Busby*, 142 N.C. App. 393, 403-04, 544 S.E.2d 4, 9-10 (2001) (observing that "actual damages" typically involve "actual monetary damages . . . connected to a contract right").

As to Defendants' latter argument, they are correct that under North Carolina law, there generally can be no liability for interference with an invalid or unenforceable contract. *See RCDI Constr., Inc. v. Spaceplan/Architecture, Planning & Interiors, P.A.*, 148 F. Supp. 2d 607 (W.D.N.C.

---

will assume, for purposes of this motion, that North Carolina law controls.

15

2001) (finding that under North Carolina, a construction contractor did not have a claim for tortious interference where contractor lacked state-required license, thereby rendering the construction contract unenforceable).[5] The court cannot find on the record before it, however, that the VA project or the Coty Project would have involved invalid, illegal contracts. Spirax posits that although it uses the term "engineering services" in the Verified Amended Complaint, it did not intend for the term to be defined as referring only to the licensed practice of engineering. The court finds that the parties' dispute as to this matter is essentially a factual one, and dismissal is therefore not appropriate.

## G.   Unfair and Deceptive Trade Practices Claim against All Defendants

Spirax alleges the Defendants engaged in unfair and/or deceptive trade practices. Specifically, Spirax alleges that Defendant Johnson (1) "stole . . . trade secrets . . . from Plaintiffs, disseminated that stolen information to each of the other Defendants, who all thereafter collectively misused and disclosed without authorization that stolen information;" (2) "knowingly and willfully secreted Spirax materials in a storage unit that Defendant Johnson rented in Spirax's name, of which storage unit Spirax was unaware;"and (3) "knowingly and willfully caused to be submitted and approved false reimbursement vouchers, by which process Defendant Johnson use Spirax monies to fund this theft, concealment and conversion of Spirax property." Ver. Am. Compl. [DE-24] ¶¶ 91-93. Spirax alleges that Defendants Benjamin and Michelle Lewis "created business entities providing services

---

[5] It appears that South Carolina courts reach the same conclusion. *See Jackson v. Bi-Lo Stores, Inc.*, 313 S.C. 272, 437 S.E.2d 168 (1993) ("The right to recover for the unlawful interference with the performance of a contract presupposes the existence of a valid, enforceable contract. A contract which contravenes public policy is void, and an action cannot be maintained for either its breach or for inducing its breach.") (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 129, at 994 & n. 68 (5th ed. 1984); James O. Pearson, Jr., Annotation, *Liability for Interference With Invalid or Unenforceable Contract*, 96 A.L.R.3d 1294 (1979)).

similar to those provided by Spirax, which entities were named using the acronym "SSI", which is also used by Spirax" and later operated those entites "in direct competition with Spirax and used the 'SSI' acronym in a manner that confused and deceived Spirax's customers and prospective customers." *Id.* ¶ 98. Finally, Spirax alleges that "all Defendants knowingly and willfully used Plaintiffs' confidential and proprietary information obtained from Defendant Johnson" to gain an unfair competitive advantage over Spirax. *Id.* at ¶¶ 91, 95.

North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA")[6] makes unlawful the use of unfair or deceptive trade practices and provides a cause of action for any person injured by such practices. N.C. Gen. Stat. §§ 75-1.1; 75-16. To state a claim under the UDTPA, a plaintiff must plausibly allege that: (1) the defendant committed an unfair or deceptive act or practice; (2) the act or practice was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. *Id.*; *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Whether the act is unfair or deceptive is question of law for the court. *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711. An act is unfair "when it offends established public policy[,] . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion of . . . power or position." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) (quotation and emphasis omitted). An act is deceptive if it "has a tendency to deceive." *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711; s*ee also Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 452-52, 279 S.E.2d 1, 7 (1981) (explaining that in order "to succeed under G.S. 75-1.1, it is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception,

---

[6] Again, it is unclear from the allegations whether the parties are contending that North Carolina or South Carolina law applies. The court will assume, for purposes of this motion, that North Carolina law applies.

plaintiff must, nevertheless, show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception"). The intent of the defendant and the defendant's good faith are irrelevant. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981).

Defendants contend that Spirax's UDTPA claim must be dismissed, at least in part, because (1) some of the alleged activities of Defendant Johnson constitute employer-employee relations which are not actionable under UDTPA; (2) Spirax is not authorized to provide engineering services, and therefore Defendants cannot be said to "unfairly compete" with Spirax; (3) the learned profession exception bars Spirax's claims against SSI Engineering and Benjamin Lewis, (4) the use of "SSI" cannot constitute a deceptive trade practice; and (5) there are insufficient allegations to show a violation of UDTPA by Defendants SSI Engineering, SSI Services, Michelle Lewis or Benjamin Lewis. The court will address each of these arguments in turn.

### 1.      Employer-employee relations

Defendants argue that Spirax's allegations that Defendant Johnson obtained, without authorization, a storage locker to store Spirax property and submitted false reimbursement vouchers for that locker amount to routine employer-employee relations which are not actionable under UDTPA. Defendants are correct that the UDTPA "was intended to benefit consumers," *see Dalton*, 353 N.C. at 656, 548 S.E.2d at 710, and was not intended to "cover employer-employee relations." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991). This does not mean, however, that just because parties are within an employee-employer relationship, an UDTPA claim is precluded. *See United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 370 S.E.2d 375 (1988). The Verified Amended Complaint can be read as alleging that Johnson's actions in obtaining the storage locker was part of a course of conduct to appropriate and later use Spirax property. That

18

is not the stuff of run-of-the-mill employment disputes, and depending on what evidence is produced, may constitute part of an unfair or deceptive trade practice. *See Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (1999).

###    2.    Engineering Services and Learned Profession Exception

Defendants also contend that the UDTPA claim must be dismissed because Spirax cannot lawfully provide engineering services, and therefore Defendants cannot be said to be unfairly competing against Spirax.  As the court discussed in connection with the tortious interference claim, this concerns a factual dispute that the court finds it cannot decide on this record.

Defendants also argue that the UDTPA claim should be dismissed against SSI Engineering and Benjamin Lewis because the professional services exception applies. Under UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).  The act clarifies, however, that "'commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b). To come within this exemption, a two part test must be satisfied: (1) "the person or entity performing the alleged act must be a member of a learned profession;" and (2) "the conduct in question must be a rendering of professional services." *Reid v. Ayers*, 138 N.C. App. 261, 266, 513 S.E.2d 231, 235 (2000).

No North Carolina state court has stated that engineering is a learned profession.  The United States District Court for the Western District of North Carolina has reached that conclusion with regard to architects, however, and the Fourth Circuit affirmed the decision in a per curiam opinion. *See RCDI Constr., Inc.*, 148 F. Supp. 2d at 618-19, *aff'd*, 29 F. App'x 120, 121 (4th Cir. 2002). The

19

court finds that under the Fourth Circuit's reasoning in *RCDI Construction*—which the court must follow in the absence of contrary decisions by North Carolina state courts—that engineering constitutes a learned profession. As to the second part of the test, the court observes, again, that there is an apparent factual dispute regarding the nature of the contracts at issue in this case. Accordingly, the court finds that it is premature to rule on whether the actions of Benjamin Lewis and SSI Engineering constituted the rendering of professional services.

### 3. SSI Acronym

Defendants also argue that to the extent the UDTPA claim is based on allegations that SSI Engineering, SSI Services, Michelle Lewis and Benjamin Lewis engaged in unfair competition by using the acronym "SSI", it must be dismissed. With no citation to any law, Defendants contend the Spirax has failed to offer evidence on a number of matters, including that Defendants' use SSI is confusing to the marketplace or that Spirax actually uses the SSI acronym.

Spirax, of course, does not have to produce evidence at this juncture. What matters are the allegations in the Verified Supplemental Complaint. The court finds the allegations sufficient to state a plausible claim.

### 4. Particular pleading

Finally, Defendants argue that there are insufficient factual allegations showing that Defendants SSI Engineering, SSI Services, Michelle Lewis or Benjamin Lewis violated UDTPA. The court agrees with this argument as to Defendants Benjamin and Michelle Lewis. There appears to be no allegations of their actions other than ones taken in a representative capacity for SSI Services and SSI Engineering. Accordingly, the Motion to Dismiss is ALLOWED as to the UDTPA

claim against Defendants Benjamin and Michelle Lewis.[7]

## H.    Conversion

For similar reasons, the court finds the Motion to Dismiss should be allowed as to Spirax's claim of conversion against Defendants Benjamin Lewis and Michelle Lewis. The North Carolina Supreme Court has stated that "[t]he tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to one another, to the alteration of their condition or the exclusion of an owner's rights." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting *Peed v. Burleson's Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)) (alteration in original). Accordingly, there are "two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Id.* (citing *Gadson v. Toney*, 69 N.C. App. 244, 246, 316 S.E.2d 320, 321-22 (1984)). There are no factual allegations showing that Defendants Benjamin Lewis or Michelle Lewis exercised ownership over any property of Spirax.[8]

## I.    Trade Secret Protection Act Claim

Under North Carolina's Trade Secrets Protection Act, an "owner of a trade secret shall have remedy by civil action for misappropriation of his trade secret." N.C. Gen. Stat. § 66-153.[9] A trade secret is defined under the act as:

Business or technical information, including but not limited to a formula, pattern,

---

[7]  The court has found, however, that the allegations are sufficient to support the civil conspiracy claim.

[8]  Again, the court has found that the allegations are sufficient to support the civil conspiracy claim.

[9]  The Verified Amended Complaint alleges that Defendants' actions violated both the North Carolina Trade Secrets Protection Act *and* the South Carolina Trade Secrets Act. Because the parties' briefing focuses on North Carolina law, the court's analysis will do the same, for purposes of this motion.

21

program, device, compilation of information, method, technique or process that:

> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintains its secrecy.

N.C. Gen. Stat. § 66-152(3). Misappropriation, in turn, is defined as "the acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66-152(1).

Defendants argue that Spirax's claim must be dismissed because Spirax fails to identify with sufficient particularity what information constitutes trade secrets. Defendants also contend that what information is identified fails to constitute trade secrets. Finally, Defendants assert that Spirax has failed to sufficiently allege that Defendants SSI Engineering, SSI Services, Benjamin Lewis and Michelle Lewis misappropriated any trade secrets. With the exception of Defendants' third argument, the court disagrees.

When determining whether information is a trade secret, the North Carolina Court of Appeals has considered the following factors:

> (1) the extent to which information is known outside the business;
> (2) the extent to which it is known to employees and others involved in the business;
> (3) the extent of the measures taken to guard the secrecy of the information;
> (4) the value of information to business and its competitors;
> (5) the amount of effort or money expended in developing the information; and
> (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Wilmington Star-News, Inc. v. New Hanover Regional Med. Ctr., Inc.*, 125 N.C. App. 174, 180-81,

22

480 S.E.2d 53, 57 (1997). Additionally, North Carolina courts have cautioned that a plaintiff may not rest on generalized allegations, but "must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Analog Devices v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003).

The court finds that Spirax's allegations are sufficient to make a plausible misappropriation of trade secrets claims as to Defendants Bryan Johnson, SSI Services, and SSI Engineering. Spirax alleges that Johnson stole files containing:

a. Spirax's customer list, including highly sensitive details on projected sales by Spirax to its customers for 2014 and forward;

b. Spirax's old and new product prices, along with Spirax's quoted prices and internal costs for services. This information includes highly sensitive and confidential information regarding discounts and other means of incentivizing customers to do business with Spirax rather than its competitors;

c. Spirax's sales strategies, including product line and market strategies, maintained as confidential by Spirax and used to develop and expand market share;

d. Customer quotes, including both old quotes and open quotes, that contain confidential information regarding Spirax's customers' desired products and services and Spirax's prices and discounts for products and services;

e. Documents detailing goods returned to Spirax, including information regarding actual or perceived problems or issues with products, which is highly sensitive information;

f. Product drawings, blueprints, and other design documents that are not publicly disclosed by Spirax;

g. Spirax's confidential "2015 strategy" document, including copies of presentations that would provide an unfair competitive advantage to companies seeking to compete for market share against Spirax and SPLC;

h. Confidential sizing and selection information for customer needs, which is information assembled by Spirax through its relationships with customers and provides Spirax with competitive advantages in marketing and sales to new and existing customers;

i. Technical data and specifications that are not publicly available;

j. Confidential strategies regarding Spirax's plans and methods of marketing and selling specific products or product lines; and

k. Spirax's sales information by distributor, which is maintained as confidential by

23

> Spirax and would provide competitors unfair advantages by revealing the depth of Spirax's business dealings with various distributors in the market.

Ver. Am. Compl. [DE-24] at ¶ 78. North Carolina cases have found similar information to constitute trade secrets. *See, e.g., Sunbelt Rentals, Inc. v. Head & Engquist Equip.,* L.L.C., 174 N.C. App. 49, 59, 620 S.E.2d 222, 230 (2005) (recognizing that North Carolina courts have found that cost history records, pricing policies, bidding formulas, special knowledge of customer needs and preferences may constitute trade secrets). Of course, upon development of a factual record, it may become apparent that information on the storage devices or Dropbox account is not information that "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use." At this juncture, however, the Verified Amended Complaint contains sufficient factual allegations to meet the first requirement of N.C. Gen. Stat. § 66-152(3).

Moreover, the court finds that Spirax has sufficiently identified the documents such that Defendants are on notice as to what they are accused of misappropriating. Spirax alleges that Johnson transferred thousands of files from the Spirax laptop to his personal electronic storage devices and/or his Dropbox account, and that among these files were the above-referenced trade secrets of Spirax. Ver. Am. Compl. [DE-24] ¶¶ 33-40; 79; *see also Philips Elec. N. America Corp. v. Hope*, 631 F. Supp. 2d 705, 721 (M.D.N.C. 2009). Similarly, the court also finds that at this juncture, Spirax sufficiently alleges that the information purported to constitute a trade secret was subject to efforts that were reasonable under the circumstances to maintain its secrecy. Ver. Am. Compl. [DE-24] ¶ 80 (alleging that Spirax utilizes password-protected computer network access,

segregated directory and file structures, and using non-disclosure agreements).

These allegations are all sufficient to state a claim against Johnson, SSI Engineering, and SSI Services. There is no allegation, however, that Defendants Michelle Lewis and Benjamin Lewis individually misappropriated any information. Accordingly, Defendants' motion to dismiss is ALLOWED as to the trade secrets claim against the Lewis Defendants,[10] and denied as to the other defendants.

## J.     Standing of Spirax-Sarco Engineering, PLC

Finally, Defendants argue that Spirax-Sarco Engineering, PLC, lacks standing to assert any claims against them, contending that the only allegations regarding this entity are that it is a U.K. entity, the parent company of Spirax-Sarco, Inc., and is actively involved in managing Spirax-Sarco, Inc. A review of the allegations in the Verified Amended Complaint, however, show that Plaintiffs allege that Johnson used a computer or computer network to intentionally alter or erase computer data of Spirax-Sarco Engineering, PLC, without its permission and Johnson illegally downloaded files containing proprietary and trade secret information belonging to Spirax-Sarco Engineering, PLC, and disseminated that information to other defendants, all of which injured Spirax-Sarco Engineering, PLC. *See* Ver. Am. Compl. [DE-24] ¶¶ 70, 72, 73, 75, 78, 87, 89, 94, 111. The court finds that this is sufficient to establish standing for Spirax-Sarco Engineering, PLC, with regard to the claims for computer trespass, misappropriation of trade secrets, unfair and deceptive trade practices, conversion, and civil conspiracy. The court agrees, however, that there are insufficient allegations to show that Spirax-Sarco Engineering, PLC has standing to assert the tortious interference claim. Accordingly, the motion to dismiss is ALLOWED to the extent it seeks the

---

[10]   Again, the court has found that the allegations are sufficient to support the civil conspiracy claim.

dismissal of the tortious interference claim by Spirax-Sarco Engineering, PLC.[11]

## IV. SPIRAX'S MOTIONS TO DISMISS COUNTERCLAIMS

Defendants have asserted several counterclaims against Plaintiffs. Defendant Bryan Johnson asserts the following counterclaims: (1) abuse of process; (2) tortious interference with prospective and contractual relations; (3) conversion; (4) trespass; (5) unfair and deceptive trade practices; (6) defamation; and (7) violation of the South Carolina Wage Payment act. Defendants SSI Engineering, and SSI Services each assert counterclaims for (1) abuse of process; (2) tortious interference with prospective and contractual relations; and (3) unfair and deceptive trade practices, with Defendant SSI Engineering further asserting a claim for unjust enrichment. Defendants Benjamin and Michelle Lewis also assert counterclaims for abuse of process. Spirax moves to dismiss all counterclaims asserted against it.

### A.    Facts underlying the counterclaims

According to Defendants, Bryan Johnson has been employed and worked in his entire life in the industrial utilities business, starting with his involvement with the Sumter Machinery Company, Inc., a municipal and construction manufacturer owned by his grandparents. Johnson Ans. & Ver. Countercl. [DE-59] ¶¶ 83-84. From 1989 through May 30, 2014, Johnson worked in sales of steam products, either as an Independent Manufacture Representative ("IMR") affiliated with Spirax, or as a direct employee of Spirax. *Id.* at ¶ 85. Specifically, from 1989 through 1998, Johnson was an employee of R.F. James Company as an IMR, and handled and sold arious industrial product lines, including the Spirax steam related product line. *Id.* at ¶ 86. As an IMR, Johnson did

---

[11]  It does not appear that Spirax-Sarco Engineering, PLC asserts either the breach of contract or breach of loyalty claim against Defendant Johnson.

not have any contract, non-compete, or non-disclosure agreement with Spirax, his employer R.F. James Company, or any other industrial utility product line. *Id.* at ¶ 87.

In 1998, Spirax hired Johnson as a direct employee, and employed him as the District Sales Manager for Eastern North Carolina from 1998 until he voluntarily resigned on May 27, 2014, effective May 30, 2014. *Id* at ¶¶ 89-90. During his employment at Spirax, Johnson obtained a storage locker, in which he stored both personal items and Spirax materials. Another Spirax employee, Tim Burns, also had access to the storage locker.

Spirax began to undergo management change in 2013, and as a result of this management change, Johnson and the new Director of Sales for Spirax began discussions about transitioning Johnson from District Sales Manager for Eastern North Carolina to an IMR. *Id.* at ¶¶ 92-94. According to Johnson, the transition from a direct employee to an IMR would require him to put up capital and receive an assignment of an exclusive sales territory, the terms of which the parties would need to work through. *Id.* at ¶ 94.

Johnson alleges that during these ongoing discussions with McGinn, on or about May 26, 2014, he attempted to back up the hard drive of his Spirax-issued laptop computer to his personal electronic storage devices and also removed personal files from the hard drive. *Id.* at ¶ 95. Johnson contends that hard drive contained Spirax-related documents as well as personal documents, such as personal tax returns, family documents, and personal photographs. *Id.* According to Johnson, he is not computer-savvy, and he backed up the information in anticipation of transitioning to an IMR and for the purpose of removing and preserving his personal information. *Id.* at ¶ 96. He also asserts that he believed that the hard drive of his Spirax-issued laptop was backed up to Spirax servers automatically, and that he is unaware of any document contained on the hard drive of his Spirax

issued laptop that would not also be available to an IMR. *Id.* at ¶¶ 97, 99.

Johnson submitted his resignation on May 27, 2014, to Reese Barefoot, the new Regional Sales Manager for the Southeast. According to Johnson, Barefoot requested that Johnson give further consideration to his resignation through at least May 30, 2014. Johnson did so, but reached out to Barefoot on May 30, 2014, to confirm his resignation and to make arrangements for Spirax to pick up equipment at Johnson's home office. *Id.* at ¶ 101. That same day, Spirax turned off Johnson's company-issued phone and computer access. *Id.* at ¶ 100.

On June 2, 2014, Barefood and Tim Burns came to Johnson's home office and removed Spirax equipment and property. Johnson contends that during this visit, he continued to represent his desire to remain affiliated with Spirax as an IMR, and he discussed transitioning existing orders and customers. *Id.* at ¶¶ 102-03. He did not volunteer to give Spirax his electronic devices because he thought all information was backed up on Spirax servers, nor did he volunteer access to the storage locker because Burns also maintained property in the storage locker and continued to have independent access to it. *Id.* at ¶ 102. Over the next month, Johnson continued to assist Spirax with his transition, and helped Spirax with customer orders in the approximate amounts of $250,000 to $400,000. *Id.* at ¶ 104.

On June 9, 2014, Johnson changed the lease and the billing of the storage locker from Spirax to himself. According to Johnson, he did this in response to a June 6, 2014, email from Reese Barefoot indicating that Spirax had not continued paying the rent for the locker. *Id.* at ¶ 130. Johnson alleges that at some point after June 9, 2014, Spirax accessed the storage unit without his knowledge or consent, and disturbed and/or removed items including his personal property. *Id.* at ¶ 131.

28

On July 9, 2014, Spirax forwarded a cease and desist letter, stating that Johnson had a contractual obligation not to compete and a non-disclosure agreement, and requesting various assurances with regard to the electronic devices. *Id.* at ¶¶ 105-106. All Defendants, including Johnson, maintain they have complied with those assurances, and further allege they have no contractual obligation not to compete with Spirax, and have no contractual non-disclosure agreement. *Id.* at ¶¶ 106, 111-13. Defendants contend that despite having knowledge that there is no enforceable non-compete contract, Spirax has made false representations to third parties that Defendants are in fact subject to a non-compete agreement. Defendants allege that Spirax's representations to third parties, and its alleged failure to preserve evidence, was done for the purpose of publicly coercing Defendants into executing a non-compete agreement ex post facto. *Id.* at ¶¶ 114-17. Defendants further allege that Spirax's actions in filing the initial pleadings, amended pleadings, and motion for temporary restraining order and preliminary injunction, "have been for the purpose of strong arming, harassing, and publicly coercing Defendants into executing a non-compete agreement and/or non-solicitation agreement *ex post facto*, to which they had no obligation to enter; and to injure, destroy, and prevent Defendants and other employee mobility in the industry; reduce innovation, suppress lawful competition; and/or allow Defendants to engage in their chosen profession." *Id.* at ¶ 120.

Johnson and SSI Services further allege that they have valid contracts to act as an IMR for a variety of industrial facility suppliers, and also allege they have valid contracts to sell goods to customers pursuant to IMR contracts, of which Plaintiffs are aware. *Id.* at ¶ 123. According to Johnson, Plaintiffs have intentionally interfered with the existing contracts, and acted maliciously to prevent Johnson from entering into additional contracts. *Id.* at ¶¶ 125-26.

Johnson also alleges that once he was aware that the storage locker was an item of concern to Plaintiffs, he made it available on August 15, 2014, for mutual inspection and for Spirax to remove any alleged Spirax property maintained in the storage locker. *Id.* at ¶ 132. Johnson contends that after that date, on August 21, 2014, Spirax entered the storage locker without authorization "for the purposes of destroying, altering, concealing, spoiling, and/or preventing Defendant Johnson's inspection of evidence . . . ." *Id.* at ¶ 133.

Finally, Johnson alleges that pursuant to the terms of his at-will employment with Plaintiffs, he earned certain guaranteed payments as salary, as well as commissions, that constitute wages under the South Carolina Wage Payment Act. He alleges is due and owed wages by Plaintiffs. *Id.* at ¶¶ 149-52.

**B.  Abuse of Process**

Plaintiffs move to dismiss Defendants' claims of abuse of process. The tort of abuse of process consists of the misuse of the legal process for an ulterior purpose. *Stanback v. Stanback*, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1969), *overruled on other grounds by Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). The elements of abuse of process are (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceeding. *Barnett v. Woody*, 242 N.C. 424, 431, 88 S.E.2d 223, 227-28 (1955). The court in *Stanback* explained what is needed to state a claim for abuse of process:

> The ulterior motive requirement is satisfied when the plaintiff allege that the prior action was initiated by defendant or used by him to achieve a collateral purpose not within the normal scope of the process used.  The act requirement is satisfied when the plaintiff alleges that once the prior proceeding was initiated, the defendant committed some wilful act to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter.

30

297 N.C. at 201, 254 S.E.2d at 624 (citations and quotations omitted). Thus, "the gravamen of a cause of action for abuse of process is the improper use of process after it has been issued," and "[t]here is no abuse of process where it is confined to its regular and legitimate function in relation to the cause of action stated in the complaint." *Chidnese v. Chidnese*, 210 N.C. App. 299, 312, 708 S.E.2d 725, 735 (2011) (citations and quotations omitted). Accordingly, "the mere filing of a civil action with an ulterior motive is not sufficient to sustain a claim for abuse of process." *Id.* (footnote omitted).

Plaintiffs argue that Defendants' counterclaims contain insufficient allegations to satisfy either element of the abuse of process tort. Defendants appear to concede many of Plaintiffs' arguments, but still maintain the allegations are sufficient to state a claim. As to the first element, Defendants allege that Plaintiffs commenced this lawsuit "to coerce Defendants into executing a non-compete agreement and/or non-solicitation agreement *ex post facto*, to which they had no obligation to enter." Johnson Ans. & Ver. Countercl. [DE-59] at ¶ 120; SSI Defs. Ans. & Ver. Countercl. [DE-60] at ¶ 85. The court agrees these allegations are sufficient to satisfy the ulterior motive requirement.

As to the second requirement—that Plaintiffs committed some wilful act not proper in the regular prosecution of the proceeding—Defendants contend the allegation that Plaintiffs willfully failed to preserve evidence after the commencement of the lawsuit is sufficient. Specifically, Defendants have alleged:

> Spirax's actions and/or inactions from May 30, 2014 to the present has resulted in the intentional and/or negligent failure to preserve evidence for the purpose of strong arming, harassing, and publicly coerc[ing] Defendants into executing a non-compete agreement and/or non-solicitation agreement *ex post facto*, to which they had no obligation to enter; and to injure, destroy, and prevent Defendants['] . . . mobility in

31

the industry; reduce innovation; suppress lawful competition; re[s]train trade; and depress wages.

SSI Defendants' Ver. Ans. & Countercl. [DE-60] ¶ 87. This allegation, of course, references both negligent actions by the Plaintiffs and actions that preceded the institution of this lawsuit. To that extent, this allegation does not suffice to show a wilful act after the initiation of this proceeding.

To the extent that Defendants allege that Plaintiffs intentionally failed to preserve evidence after the suit was initiated on September 17, 2014, there is no indication that Plaintiffs' actions were a misuse of a process within the meaning of North Carolina's common law regarding the tort. *See, e.g., Chidnese*, 201 N.C. App. at 313-14, 708 S.E.2d at 735-36 (concluding that the obtaining of a *ex parte* temporary restraining order and filing a motion stating that party had violated TRO, where there was no basis for either action constituted abuse of process); *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 603, 646 S.E.2d 826, 831 (2007) (concluding that plaintiff state a claim for abuse of process where plaintiff alleged defendant sought an injunction to coerce the plaintiffs to pay a judgment for which they were not responsible); *Hewes v. Wolfe*, 74 N.C. App. 610, 330 S.E.2d 16 (1985) (finding that the malicious filing of *lis pendens* and notices of liens on property owned by plaintiffs for the purpose of injuring and destroying credit business of plaintiffs sufficient to support abuse of process action). Accordingly, to the extent the motion to dismiss seeks to dismiss the abuse of process counterclaims, it is ALLOWED.[12]

**C.     Tortious Interference with Prospective Economic Advantage/Contractual relations**

Plaintiffs also move to the dismiss the counterclaims for tortious interference with prospective economic advantage/contractual relations. To reiterate, the elements of a claim of

---

[12] This is without prejudice to Defendants to seek appropriate relief, if warranted, on the basis of spoliation.

tortious interference with contract are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Holleman*, 193 N.C. App. at 500, 668 S.E.2d at 589-90. "The only difference in these elements for a tortious interference with prospective economic advantage claim is that instead of an existing contract, there must be a contract that would have been entered into but for the defendant's conduct." *Nat'l Welders Supply Co.*, 2008 WL 1837251, at *1 (W.D.N.C. Apr. 22, 2008). Ordinarily, to state a claim, a party must identify a contract or actions toward an identifiable third-party to support such a claim. *See, .e.g, BioSignia, Inc. v. Life Line Screening of America, Ltd.*, No. 1:12CV1129, 2014 WL 2968139, at *8 (M.D.N.C. July 1, 2014) ("Thus, a plaintiff asserting a claim for tortious interference with prospective economic advantage must first identify the contract that the defendant induced a third party to refrain from entering."); *Silverdeer, LLC v. Berton*, NO. 11 CVS 3539, 2013 WL 1792524, at *11 (N.C. Super. Apr. 24, 2013) ("Here, Plaintiffs have pleaded only generalized conjecture regarding a prospective economic advantage, and they have failed to identify a person or entity with whom they are unable to enter into a contract. Thus, this claim is insufficiently pleaded and fails for that reason.").

In the counterclaims, Defendants do not identify any particular contracts that third-parties were induced not to enter or perform as a result of Plaintiff's unjustified actions. Instead, Defendants contend that because Plaintiffs themselves allege that Defendants were bidding on the Coty Project and the VA Project, this is sufficient to identify contracts and state a claim. *See* Defs. Resp. in Opp. [DE-80] at 15 (citing Ver. Am. Compl. [DE-24] ¶ 46). In their Answers, however, Defendants deny

the Plaintiffs' allegations with regard to the Coty Project and the VA project. *See* Johnson Ans. &

Ver. Countercl. [DE-59] ¶ 24 ("The allegations of paragraphs 46 through 50 are denied and strict

proof demanded thereof."), SSI Defs' Ans. & Ver. Countercl. [DE-60] ¶ 23 ("The allegations of

paragraphs 46 through 50 are denied and strict proof demanded thereof."). Therefore, the court

cannot read Defendants' counterclaims as incorporating the Plaintiffs' allegations. Because

Defendants have failed to allege facts showing that any particular third parties were induced not to

enter a contract with Defendant, or induced not to perform a contract with Defendants, the motions

to dismiss are ALLOWED as to the tortious interference counterclaims.

**D.  Conversion**

Plaintiffs move to dismiss Johnson's counterclaim for conversion, arguing the allegations

are insufficient to show the second element of the claim. As this court already has noted, there are

"two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession

or conversion by the defendant." *See Variety Wholesalers,* 365 N.C. at 523, 723 S.E.2d at 747.

Plaintiffs contend that because Johnson alleges that Spirax, "accessed the storage locker, and

disturbed and/or removed items including personal property of Defendant Johnson," he has failed

to show that Plaintiffs "acted to the alteration of [the property's] condition or hte exclusion of

Defendant Johnson]'s rights." *Id.* The plain meaning of the allegations, however, which state that

Spirax removed items of Johnson's personal property (which he lawfully owned and possessed)

without his authorization, are sufficient to state the second element of a conversion claim. *See id.*

Plaintiffs' motion to dismiss is DENIED as to Johnson's counterclaim for conversion.

**E.  Trespass**

Plaintiffs' motion to dismiss Johnson's counterclaim for trespass almost must be denied. To

34

state a claim for trespass under North Carolina law, a plaintiff must allege sufficient facts showing two essential elements: (1) the plaintiff must have actual or constructive possession of the real property, and (2) the defendant made an intentional and unauthorized entry on the land. *See Matthews v. Forrest*, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952); *see also* N.C. Pattern Jury Instr. 805.00. Many cases also refer to a third element: damages. *See Matthews*, 235 N.C. at 283; 69 S.E.2d at 555; *see also Keyzer v. Amerlink, Ltd.*, 173 N.C. App. 284, 292, 618 S.E.2d 768, 773 (2005). North Carolina courts have consistently maintained, however, that "every unauthorized, and therefore unlawful, entry into the close of another is a trespass" and "[w]here a trespass is shown the party aggrieved is entitled to at least nominal damages." *Lee v. Stewart*, 218 N.C. 287, 287, 10 S.E.2d 804, 805 (1940); *see also Hoffman v. Vulcan Materials Co.*, 91 F. Supp. 2d 881, 887 (M.D.N.C. 1999); *Taha v. Thompson*, 120 N.C. App. 697, 704, 463 S.E.2d 553, 557 (1995) ("Actual damages do not have to be proven, since any unauthorized entry at least entitles plaintiff to nominal damages."). To "recover punitive damages for . . . a trespass, [a plaintiff] must allege circumstances of aggravation authorizing punitive damages." *Matthews*, 235 N.C. at 283, 69 S.E.2d at 555.

Plaintiffs argue that Johnson's counterclaim fails to allege sufficient facts to show that he had possession of the storage locker such that he could exclude Tim Burns or Spirax from accessing it, and therefore it must be dismissed. The court agrees with Defendants that the rights of possession appear to involve some issues of fact, and that therefore this is not a basis for dismissal for failure to state a claim.

Alternatively, Plaintiffs argue that any claim for actual and punitive damages arising from the alleged trespass be dismissed. Johnson appears to concede that he has not alleged facts showing he suffered actual damages, and even in the event he had not so conceded, the court finds the

allegations insufficient. *See Matthews*, 235 N.C. at 283, 69 S.E.2d at 555 ("If a [party] would recover

compensatory damages for a trespass to realty, he must allege facts showing actual damage . . . .").

As to the punitive damages claim, such damages are available where the defendant is shown to have

"acted willfully, intentionally, maliciously, and recklessly." *Miller v. Brooks*, 123 N.C. App. 20, 31,

472 S.E.2d 350, 357 (1996).   Here, Johnson alleges that once he was made aware of Plaintiffs'

concerns of property in the storage locker, he made it available to them on August 15, 2014, for

mutual inspection and for Plaintiffs to remove any of their property from the locker. Johnson. Ans.

& Ver. Countercl. [DE-59] ¶ 132.   Johnson alleges that despite giving Plaintiffs that opportunity,

they later entered the storage locker without his authorization on August 21, 2014.   At this juncture,

these allegations are sufficient to support a claim for punitive damages.   *Cf. Lee v. Bir*, 116 N.C.

App. 584, 449 S.E.2d 34 (1994) (explaining that a punitive damages instruction is warranted where

there is evidence "from which the jury could find that the defendant's trespass was accompanied by

a reckless disregard for [the plaintiff's] rights").   The motion to dismiss Johnson's counterclaim for

trespass, and any accompany claim for punitive damages is DENIED. To the extent that Plaintiff

seeks to prevent Johnson from recovering actual damages, the motion is ALLOWED.

## F.     Defamation

Johnson alleges that Plaintiffs have published false statements about him, including:

a)      That Defendant Johnson was subject to a contractual non-compete agreement,
        non-solicitation agreement, and/or non-disclosure agreement in the exercise
        of his profession;

b)      That Defendant Johnson criminally violated the law in the exercise of his
        profession;

c)      That Defendant Johnson "would not be around for long"' and

d)      . . . others' statements that may be disclosure [sic] during the course and
        scope of discovery.

36

Johnson Ver. Ans. & Countercl. [DE-59] ¶ 145. Plaintiffs contend Johnson's counterclaim for defamation must be dismissed.

Under North Carolina law:

> Generally, libel and slander are two forms of defamation, with the difference between them being that slander involves spoken words and libel is written words. *Phillips v. Winston–Salem/Forsyth County Bd. of Educ.,* 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994). A statement is defamatory if it tends "to prejudice another in his reputation, office, trade, business, or means of livelihood." *Donovan v. Fiumara,* 114 N.C. App. 524, 526, 442 S.E.2d 572, 574 (1994)(quoting, *Morrow v. Kings Department Stores,* 57 N.C. App. 13, 20, 290 S.E.2d 732, 736, *disc. review denied,* 306 N.C. 385, 294 S.E.2d 210 (1982)). The statement must also be false. *Id.* at 528, 442 S.E.2d at 574.
> Slander and libel are also divided into two general categories of defamation *per se* and defamation *per quod.* A defamatory statement that charges a plaintiff with a crime involving moral turpitude, impeaches his or her trade or business, or accuses him or her of having a "loathsome disease" is actionable *per se* and the plaintiff does not have to allege or prove malice or special damages. They are presumed. *Id.* at 527–528, 442 S.E.2d at 574–575. For other defamatory statements, malice and special damages must be alleged and proven. *Id.* In pleading a cause of action for defamation, a plaintiff must recount the allegedly defamatory statement either verbatim or at least with enough specificity to allow the Court to decide if the statement is defamatory. *Morrow,* 57 N.C. App. at 21, 290 S.E.2d at 737.

*Jolly v. Acad. Collection Serv., Inc.*, 400 F. Supp. 2d 851, 861 (M.D.N.C. 2005) (footnote omitted). Additionally, North Carolina courts have recognized there are "'constitutional limits on the *type* of speech' subject to a defamation action" and "[i]f a statement 'cannot reasonably [be] interpreted as stating actual facts about an individual[,]' it cannot be the subject of a defamation suit." *Daniels v. Metro Magazine Holding Co., L.L.C.*, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006).

Plaintiffs contend that the defamation claim must be dismissed because (1) the statements attributed to them constitute opinions, not facts; (2) they are entitled to absolute privilege with regard to statements made in the course of this litigation; (3) the alleged statements do not constitute

defamation *per se* and Johnson has failed to allege special damages as required for a defamation *per quod* claim, and (4) Johnson has failed to allege to which third parties the statement was published.

The court agrees that the statement that Johnson "would not be around for long," is a statement of opinion about Johnson's future that does not give rise to a defamation claim. *See id.* at 539-40, 634 S.E.2d at 590 ("Although someone cannot preface an otherwise defamatory statement with 'in my opinion' and claim immunity from liability, a pure expression of opinion is protected because it fails to assert actual fact."); *Craven v. Cope*, 188 N.C. App. 814, 818, 656 S.E.2d 729, 733 (2008) (explaining that the defendant's statement in a mailing that if elected, plaintiff 'would raise your taxes to pay for new development" was a "political opinion and campaign assertion[] . . incapable of being actually or factually proven or disproven"). The alleged statements that Johnson is subject to a non-compete agreement and that he criminally violated the law in the exercise of his profession, however, are not statements of opinion, but rather are statements of purported fact about Johnson.[13]

Johnson does not dispute that he has failed to plead special damages; accordingly, these two statements will support a plausible claim for defamation only if the statements constitute defamation *per se*. *See Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 30, 568 S.E.2d 893, 898 (2002) (explaining that malice and damages are presumed only in the case of libel or slander *per se*). "In North Carolina, publications or statements which are susceptible of but one meaning, when considered alone without innuendo, colloquium, or explanatory circumstances, and tend to 'disgrace or degrade the party or hold him up to public hatred, contempt, or ridicule, or cause him to be

---

[13] Plaintiffs are correct that Johnson's allegation that Plaintiffs made other unspecified statements that may be disclosed during discovery is insufficient to support a claim for defamation.

shunned or avoided' are defamatory *per se*." *Andrews v. Elliot*, 109 N.C. App. 271, 426 S.E.2d 430 (1993). Johnson contends that the two statements constitute defamation *per se* because they "touch" or concern his trade or profession. *See Johnson v. Bollinger*, 86 N.C. App. 1, 9, 356 S.E.2d 378, 383 (1987). "False words imputing to a merchant or business man conduct derogatory to his character and standing as a business man and tending to prejudice him in his business are actionable, and words so uttered may be actionable *per se*." *Boyce & Isley*, 153 N.C. App. at 30, 568 S.E.2d at 898 (quoting *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955)). North Carolina courts have explained that in order to constitute defamation *per se* with regard to a party's trade or profession

> the false words (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business. That is to say, it is not enough that the words used tend to injure a person in his business. To be actionable *per se*, they must be uttered of him in his business relation.

*Badame*, 242 N.C. at 757, 89 S.E.2d at 468. Thus, in *Andrews*, the North Carolina Court of Appeals concluded that where the plaintiff alleged the defendant made statements that the plaintiff (an attorney) lied to a reporter, violated the Rules of Professional Conduct, and was guilty of criminal and unethical conduct, the plaintiff alleged the essential elements for defamation *per se*. 109 N.C. App. at 275, 426 S.E.2d at 432. Similarly, the North Carolina Court of Appeals determined that letters sent to television stations were libelous *per se* where the letters asserted plaintiff breached contracts and failed to pay bills. *Matthews, Cremins, McLean, Inc. v. Nichter*, 42 N.C. App. 184, 256 S.E.2d 261 (1979), *cited in Johnson*, 86 N.C. App. at 10, 356 S.E.2d at 384.

Under *Andrews*, the alleged statement that Johnson criminally violated the law in the exercise of his profession constitutes defamation *per se*. So does the statement that Johnson is working for

39

the other defendants in violation of a non-compete. *See Matthews, Cremins McLean*, 42 N.C. App. at 188, 256 S.E.2d at 264.

Finally, the court does not discern that the allegations are factually insufficient such that they should be dismissed under *Twombly* and *Iqbal*, nor does the court find, on the basis of the pleadings alone, that the defense of absolute privilege bars Johnson's counterclaim. Accordingly, Plaintiff's motion to dismiss is denied as to Johnson's counterclaim to the extent that Johnson alleges Plaintiffs made statements that Johnson criminally violated the law in the exercise of his profession and that Johnson was subject to a non-compete. In all other respects, the motion to dismiss the counterclaim for defamation is allowed.

G.    **Unfair and Deceptive Trade Practices**

Defendants SSI Services, SSI Engineering, and Johnson assert an unfair and deceptive trade practices claim[14] against Plaintiffs. Again, to state such a claim under North Carolina law, a plaintiff must plausibly allege that: (1) the defendant committed an unfair or deceptive act or practice; (2) the act or practice was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711. Here, Defendants have alleged that Plaintiffs have made false statements that these Defendants were subject to a non-compete, in an effort to injure SSI Services, SSI Engineering, and Johnson. This suffices to establish a plausible claim for unfair and deceptive trade practices. *See, e.g., Boyce & Isley*, 153 N.C. App. at 36, 568 S.E.2d at 902. The motions to dismiss the counterclaims for unfair and deceptive trade practices are DENIED.

---

[14]  Defendants do not specify whether they assert this claim under North Carolina or South Carolina law. The parties' briefing is dedicated to North Carolina law, so the court will assume, for purposes of this motion only, that the claim is asserted under North Carolina law.

## H.    Payment of Wages

Plaintiffs also seek the dismissal of Johnson's counterclaim alleging Plaintiffs violated the

South Carolina Payment of Wages Act, S.C. Code §§ 41-10-10 *et seq.* The Fourth Circuit has

explained:

> The S.C. Wages Act was designed to "protect employees from the unjustified and wilful retention of wages by the employer." *Rice v. Multimedia, Inc.,* 318 S.C. 95, 456 S.E.2d 381, 383 (1995). The Act provides employees in South Carolina with a cause of action to recover for an employer's "failure to pay wages due to an employee as required by Section 41–10–40 or 41–10–50." S.C. Code Ann. § 41–10–80(C). In turn, § 41–10–40 directs South Carolina employers to timely pay their employees "all wages due," and § 41–10–50 similarly provides that when a South Carolina employer discharges an employee, it must timely pay that employee "all wages due." *See also Mathis v. Brown & Brown of S.C., Inc.,* 389 S.C. 299, 698 S.E.2d 773, 781 (2010). The S.C. Wages Act defines the term "wages" as "all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are  *106 due to an employee *under any employer policy or employment contract.*" S.C.Code Ann. § 41–10–10(2) (emphasis added); *see also Allen v. Pinnacle Healthcare Sys., LLC,* 394 S.C. 268, 715 S.E.2d 362, 365 (Ct.App.2011) ("The Act also defines 'wages' as 'all amounts . . . which are due to an employee under any . . . 'employment contract' " (omissions in original) (quoting S.C.Code Ann. § 41–10–10(2))).

*Barton v. House of Raeford Farms, Inc.*, 745 F.3d 95, 105-06 (4th Cir. 2014). Plaintiffs argue that

Johnson has failed to allege the time periods when his wages were withheld, and he has failed to

allege facts regarding the amount of wages he was withheld.

With regard to the former argument, Plaintiffs quote language from a District of South

Carolina case: "The relevant date for determining whether the employer reasonably withheld wages

is at the time at which the wages were withheld, i.e., when the employer allegedly violated the act."

*Young v. CareAlliance Health Servs.* No. 2:12-2337-RMG, 2014 WL 4955225, at *14 (D.S.C. Sept.

29, 2014) (citing *Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 316, 698 S.E.2d 773, 782

(2010)). The court's review of *Young*, and the cases it cites, reveals that those courts were concerned with whether a defendant had established a defense that may caution against the imposition of treble damages. *Id.* at *14; *Mathis*, 389 S.C. at 315 , 698 S.E.2d at 781. The court has not identified, nor have Plaintiffs cited to, a case dismissing a South Carolina Payment of Wages Act claim because the plaintiff failed to allege a precise time period during which the wages were not paid. In any event, the court concludes that Johnson's allegations that he worked through May 30, 2014, and was not paid all commission and salary through the end of his employment are sufficient to state a claim.

As to the latter argument, the court does not conclude that Johnson must allege the precise amount of wages due to him in order to state a claim. His allegations are sufficient to put Plaintiffs on notice as to the nature and extent of his claim. The motion to dismiss the counterclaim for violation of the South Carolina Payment of Wages Act is DENIED.

## I. Quantum Meruit

The last counterclaim at issue in motions to dismiss is SSI Engineering's claim for quantum meruit/unjust enrichment, in which SSI Engineering alleges it provided engineering services to Spirax, to the benefit of Spirax, for which SSI Engineering was not paid. SSI Defs. Ans. & Ver. Countercl. [DE-59] ¶¶ 104-107. Plaintiffs contend the counterclaim must be dismissed because the doctrine of clean hands bars SSI Engineering's counterclaim, and because Defendants have failed to allege sufficient facts to show that any services rendered were outside of the parties' contractual agreement.

Plaintiffs' reliance on the clean hands doctrine appears to stem from Defendants' consent to certain preliminary injunctive relief. As the court has previously discussed, the parties hotly dispute the facts giving rise to this action, and the court has not interpreted Defendants' consent to certain

injunctive relief to be admission of bad faith or underhanded dealing. *See* April 17, 2015, Order [DE-82] at 8. Thus, the court will not dismiss the counterclaim on the basis of the clean hands doctrine.

There is, however, no factual assertions to support the quantum meruit claim. SSI Engineering has essentially asserted legal conclusions it its counterclaims, with no underlying facts. According, the motion to dismiss this counterclaim is ALLOWED, without prejudice to Plaintiffs to file a motion for leave to file an amended counterclaim with sufficient factual detail.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [DE-57] is ALLOWED in part and DENIED in part. Spirax Sarco Engineering, PLC's claim for tortious inteference is DISMISSED, as are Plaintiff's claims against Defendants Benjamin Lewis and Michelle Lewis in their individual capacity for unfair and deceptive trade practices, conversion, violation of trade secrets act. Defendants may renew their motion to dismiss within thirty days as to the breach of loyalty claim, provided they address the proper choice of law for the claim.

Plaintiffs' Motions to Dismiss [DE-76; DE-78] are ALLOWED in part and DENIED in part. All the Defendants' counterclaims for abuse of process and tortious interference are DISMISSED. Defendant Johnson's counterclaim for *actual damages* arising from trespass is DISMISSED. Defendant SSI Engineering's claim for quantum meruit is DISMISSED.

This the /6 day of August, 2015.

James C. Fox
James C. Fox
Senior United States District Judge